1  Curtis A. Graham, Bar No. 215745
   Robert A. Orozco, Bar No. 201532
2  Kevin D. Sullivan, Bar No. 270343
   FORD & HARRISON LLP
3  350 South Grand Avenue, Suite 2300
   Los Angeles, CA  90071
4  Telephone:  (213) 237-2400
   Facsimile:   (213) 237-2401
5  E-mail:  cgraham@fordharrison.com
            rorozco@fordharrison.com
6            ksullivan@fordharrison.com

7  Kenneth Bello, Bar No. 036630
   BELLO BLACK & WELSH LLP
8  699 Boylston Street, 10th Floor
   Boston, MA 02116
9  Telephone:  (617) 247-4100
   Facsimile:   (617) 247-4125
10 E-mail:  kbello@belloblack.com
   Appearance *Pro Hac Vice*

11

12 Attorneys for Defendant
   CRA INTERNATIONAL, INC.

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16 DAVID SALANT, an individual,          Case No.  CV12-04836 PSG

17              Plaintiff,

18 v.                                    **ANSWER TO COMPLAINT,
                                         AFFIRMATIVE DEFENSES AND
19 CRA INTERNATIONAL, INC., a            COUNTERCLAIM OF CRA
   Massachusetts Corporation, and        INTERNATIONAL, INC.**
20 DOES 1 through 10, inclusive,

21              Defendants.              Complaint filed:  August 15, 2012

22

23        Defendant CRA International, Inc. ("CRA"), by and through its attorneys,

24 hereby answers and responds to Plaintiff David Salant's ("Plaintiff") Complaint

25 (the "Complaint").  All allegations not specifically admitted are denied.

26        1.    Admitted.

27        2.    Admitted.

28

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1

3.      CRA is without knowledge sufficient to admit or deny the allegations contained in Paragraph 3 of the Complaint and, on that basis, denies the allegations contained therein.

4.      CRA is without knowledge sufficient to admit or deny the allegations contained in Paragraph 4 of the Complaint and, on that basis, denies the allegations contained therein.

5.      As CRA has removed the Complaint filed by Plaintiff to the United States Federal District Court for the District of Northern California, no response is required.

6.      Admitted.

7.      CRA is without knowledge sufficient to admit or deny the allegations contained in Paragraph 7 of the Complaint and, on that basis, denies the allegations contained therein..

8.      CRA admits that it considered engaging Salant as an employee, but that both parties agreed that it would be more appropriate for Salant to be engaged as a consultant, in part because he was providing consulting services for a client of Salant's.  CRA denies the last sentence of Paragraph 8 of the Complaint.

9.      CRA admits that it entered into a written agreement with Plaintiff entitled Senior Consultant Arrangement.  CRA denies the characterization of his relationship as reflected in the second sentence of Paragraph 9 of the Complaint.

10.      CRA admits the first sentence of Paragraph 10 of the Complaint.  The remainder of the first paragraph of Paragraph 10 of the Complaint sets forth only a legal conclusion to which no response is required.

(a)      CRA admits only that Salant was able to use an office in Palo Alto.

(b)      CRA admits only that among other venues, Salant has access to perform his duties as a Senior Consultant at CRA's offices located in Palo Alto, California and Boston, Massachusetts.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1                              - 2 -                              ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM OF CRA
INTERNATIONAL--CV12-04836 PSG

1          (c)     Denied.

2          (d)     Denied.

3          (e)     CRA denies that it provided Salant with employment benefits.

4    CRA admits that Salant was provided with a health insurance benefit for a six

5    month period, but not the benefit that is provided to CRA regular employees.

6          (f)     Denied.

7          (g)     Denied.

8          (h)     Denied.  Further responding, Salant from time to time would

9    utilize internal CRA employees in the performance of his tasks as a Senior

10   Consultant.

11         (i)     CRA is without knowledge sufficient to admit or deny the

12   allegations contained in Paragraph 10(i) of the Complaint and, on that basis, denies

13   the allegations contained therein.

14         (j)     CRA is without knowledge sufficient to admit or deny the

15   allegations contained in Paragraph 10(j) of the Complaint and, on that basis, denies

16   the allegations contained therein.

17         (k)     Denied.  Further responding, CRA identified Plaintiff as a

18   Senior Consultant to CRA.

19         (l)     CRA is without knowledge sufficient to admit or deny the

20   allegations contained in Paragraph 10(l) of the Complaint and, on that basis, denies

21   the allegations contained therein.

22   11.    Denied.

23   12.    Paragraph 12 of the Complaint sets forth only a legal conclusion to

24   which no response is required.  Further responding, CRA denies any implication

25   that it is liable to Plaintiff under any legal theory, including the California Unfair

26   Competition Law identified by Plaintiff.

27   13.    Paragraph 13 of the Complaint sets forth only a legal conclusion to

28   which no response is required.  Further responding, CRA denies any implication

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1                                    - 3 -                   ANSWER TO COMPLAINT, AFFIRMATIVE
                                                                      DEFENSES AND COUNTERCLAIM OF CRA
                                                                      INTERNATIONAL--CV12-04836 PSG

1  that it is liable to Plaintiff under any legal theory, including the California Unfair

2  Competition Law identified by Plaintiff.

3       14.    Denied.

4       15.    Paragraph 15 of the Complaint sets forth only a legal conclusion to

5  which no response is required.  Further responding, CRA denies any implication

6  that it is liable to Plaintiff under any legal theory, including the California Unfair

7  Competition Law identified by Plaintiff.

8       16.    Denied.

9       17.    Denied.

10       CRA denies that Plaintiff is entitled to any form of relief including, but not

11  limited to, those requests for relief set forth in the Complaint, or any other form of

12  relief.

## DEFENSES/AFFIRMATIVE DEFENSES

14       Having fully answered the Complaint, CRA pleads the following defenses

15  and/or affirmative defenses on its own behalf, without waiving any arguments

16  which it may be entitled to assert regarding the burden of proof, legal presumptions

17  or other legal characterizations.

## FIRST AFFIRMATIVE DEFENSE

19       CRA alleges Plaintiff's cause of action under the Business and Professions

20  Code is barred in whole, or in part, by the damages limitations set forth in

21  California Business and Professional Code § 17200 et seq.

## SECOND AFFIRMATIVE DEFENSE

23       Plaintiff's Complaint under the California Unfair Competition Law is

24  untimely under the four-year limitations applicable to such claims.

## THIRD AFFIRMATIVE DEFENSE

26       CRA alleges that prosecution of this action by Plaintiff under Business and

27  Professions Code §§ 17200, et seq., as applied to the facts and circumstances of this

28  case, would constitute a denial of CRA's substantive and procedural due process

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1     - 4 -     ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM OF CRA
INTERNATIONAL--CV12-04836 PSG

rights under the Fourteenth Amendment of the United States Constitution and under the Constitution and laws of the State of California.

## FOURTH AFFIRMATIVE DEFENSE

The claim for compensatory damages under is barred because compensatory damages are not permitted under either a claim for unfair business practices and/or Business and Professions Code sections 17200, et seq.

CRA also incorporates by reference each and every affirmative defense available to it under Rule 8(c) and 12(d) of the Federal Rules of Civil Procedure, or otherwise, that discovery might reveal to be appropriate and reserves the right to assert additional affirmative defenses as Plaintiff's claims are clarified during the course of this litigation and/or which mature, become known, or are acquired subsequent to the filing of this Answer.

## COUNTERCLAIM OF CRA INTERNATIONAL, INC.

1.     Counter-Claimant CRA is a public company that is incorporated in the Commonwealth of Massachusetts, with a principal place of business in Boston, Massachusetts.

2.     Counter-Defendant David Salant ("Salant") is an individual who was formerly associated with CRA as a Senior Consultant.

## FACTS

3.     CRA is in the business of providing sophisticated economic, business and finance consulting to businesses in the United States and in many foreign countries.  See www.crai.com.  The organization is one of the leading sources of expert witnesses to law firms and their respective clients in its fields of expertise. In providing these services, CRA engages leading experts, often times professors at leading universities, as consultants to CRA.

4.     On or about December 11, 2006, CRA entered into a written agreement with Salant whereby Salant became associated with CRA as a Senior

Consultant.  A true and accurate copy of the December 11, 2006 Senior Consultant

Agreement (the "December 11, 2006 Agreement") is attached hereto as <u>Exhibit A</u>.

5.     The December 11, 2006 Agreement provided for Salant to be given a

loan in the principal amount of $200,000, with portions of the loan to be forgiven

over a four-year period if he remained associated with CRA.  Specifically:

> "Portions of the principal, and corresponding interest
> accrual, will be forgiven as follows:--1/10 on the first
> anniversary date of the e loan, 2/10 on the second
> anniversary date of the loan, 3/10 on the third anniversary
> date of the loan and 4/10 on the fourth anniversary date of
> the loan."

6.     To secure the loan, the December 11, 2006 Agreement required Salant

to use $120,000 of the loan proceeds to purchase CRA stock in the open market,

which stock "will be held by CRA under a stock restriction agreement and will be

collateral for CRA for the outstanding balance of the loan and will be restricted

from sale for the entire four (4) year period under all circumstance."

7.     The December 11, 2006 Agreement further provides that if Salant

ceases to be a Consultant to CRA or if the agreement is terminated "before the end

of the final year of forgiveness, "you will be required to repay the remaining

unforgiven loan balance and any accrued or unforgiven interest within 30 days of

the earlier of such dates."

8.     By letter dated July 7, 2008, CRA provided Salant with formal notice

of its intention to terminate the December 11, 2006 Agreement effective

September 5, 2008.  A true and accurate copy of the July 7, 2008 letter is attached

hereto as <u>Exhibit B</u>.  In that letter, CRA informed Salant that the current

outstanding balance, principal and interest, of the loan was $187,352.89.  Salant has

failed to tender repayment of the loan despite CRA's repeated demands.  As interest

is accruing on an ongoing basis (at a rate of $24.51 per day), the outstanding

indebtedness to CRA is presently more than $221,000, less the value of the CRA

stock held as security for the loan.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1                                       - 6 -

ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM OF CRA
INTERNATIONAL--CV12-04836 PSG

## CLAIM FOR RELIEF

## COUNT I – Breach of Contract

9.      CRAI repeats and incorporates by reference the allegations stated in Paragraphs 1-14 above as if stated fully herein.

10.     As part of the December 11, 2006 Agreement, CRA offered and provided Salant a loan of $200,000.  CRA terminated that agreement effective September 7, 2008, at which time Salant owed CRA a total of $187,352.89, inclusive of principal and interest.  As of the date of this Counterclaim, the amount due exceeds $221,000, as interest continues to accrue.

11.     Salant has refused to repay any portion of principal and interest due.

12.     As a result of Salant's refusal and failure to pay what he owes, CRA has suffered damages in the amount of $221,000, which amount continues to increase due  in accordance with the provisions of the December 11, 2006 Agreement, offset only by the value of the CRA stock held as security for the loan

## PRAYER FOR RELIEF

WHEREFORE, CRA respectfully requests that this Court:

1.      Enter Judgment in its favor on the Counterclaim;

2.      Order Salant to pay to CRA all principal and interest due under the December 11, 2006 Agreement;

3.      Order all other relief that the Court deems fair and just.

October 9, 2012                          Respectfully submitted,

FORD & HARRISON LLP


By:  ___/s/_____
          Curtis A. Graham
          Robert A. Orozco
          Kevin D. Sullivan
          Attorneys for Defendant CRA
          INTERNATIONAL, INC.

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1                          - 7 -                    ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM OF CRA
INTERNATIONAL--CV12-04836 PSG

# EXHIBIT A

December 11, 2006

David Salant
332 Blackfield Drive
Tiburon, CA  94920

Re:    Senior Consultant Arrangement with CRA International

Dear David:

As I have discussed with you, CRA International, Inc. ("CRA") would like you to join the firm as a Senior Consultant.  We believe that you will find a Senior Consultant role to be rewarding.  CRA has established such relationships with only a discrete number of the highest-quality economists and consultants in various industries.  CRA will seek to include you in our marketing activities and in our literature where appropriate, and will seek to facilitate projects for you with our client base as well as with new clients.  In addition, as you develop close working relationships over time with particular staff members and are able to delegate more work, your consulting activities will likely become more efficient, permitting you to take on additional projects.

As a Senior Consultant, your compensation will be as follows:

1.  Annual Retainer:  Provided that you make sixty-six (66%) percent of your consulting time available to CRA (at least approximately 1,267 billable hours), CRA will pay you an annual retainer in the amount of $240,000, to be paid monthly in arrears.  CRA reserves the right to re-evaluate this retainer from time to time if CRA determines that you are not providing the above amount of consulting time to CRA.

2.  Forgivable Loan.  Within thirty days after the effective date of this agreement, you will receive a four (4) year forgivable loan of $200,000, bearing interest at the Applicable Federal Rate, which varies based on the month during which the loan is granted and which is currently 4.97%, compounded annually.  An amount equal to $120,000 from the proceeds of the loan shall be used by you to purchase CRA stock in the open market within five (5) trading days of receipt of the loan proceeds (the "CRA Stock").  The CRA Stock will be held by CRA under a stock restriction agreement (the "SRA") and will be collateral for CRA for the outstanding balance of the loan and will be restricted from sale for the entire four (4) year period under all circumstances.  Portions of the principal, and corresponding interest accrual, will be forgiven as follows: -- 1/10 on the first anniversary date of the loan, 2/10 on the second anniversary date of the loan, 3/10 on the third anniversary date of the loan,

**EXHIBIT A**

December 11, 2006
Page 2

and 4/10 on the fourth anniversary date of the loan. The actual mechanics for the forgiveness of the loan is a process of "crossing checks" – CRA shall make its annual payment to you of forgiven principal and interest through its regular payment process and you shall write CRA a check for the annual principal installment and accrued interest. If you cease to be a consultant to CRA or this Agreement is terminated before the end of the final year of forgiveness, you will be required to repay the remaining unforgiven loan balance and any accrued or unforgiven interest within 30 days of the earlier of such dates, but the SRA will remain in effect for the balance of the four year period. My understanding is that you would incur taxable events from this program, only upon, and to the extent of, the forgiveness of each portion of the loan's principal and interest, but you should consult your own tax advisor for specific tax advice.

3. <u>Year End Performance Payment</u>: You are eligible for a year end performance payment. This payment is discretionary and is based on company, practice, and personal performance. This payment will be in the form of cash and/or stock, payable based on the results of CRA's fiscal year, as determined after the end of the fiscal year. The fiscal year ends each year on the last Saturday of November. Payment is dependent on this Agreement remaining in effect, and not under termination notice, on the day of payment. There is no entitlement to payment if this agreement terminates or expires part way through a fiscal year. This payment would be paid after the end of the fiscal year and after receivables for the year are substantially paid. Assuming profitability equal to CRA norms, your minimum payment bonus would equal 10% of the net collected revenues you source (including partial credit for revenues jointly sourced with others), less project expenses, including reimbursable expenses and computer charges.

4. <u>Performance of Services</u>. During the term of this Agreement, you will refer to CRA, on an exclusive basis, all auction related services. In addition, you will refer to CRA on a first-right-of-refusal basis, economic, financial or business consulting opportunities, including opportunities to assist any of CRA's competitors in any projects, studies, surveys or similar services, (i) in which you have the opportunity to be engaged as an expert witness or consultant or (ii) about which you are contacted, but are too busy, or decline, to take on yourself. CRA would provide support work required in all such matters. However, should there be instances where CRA is unable to support you or to do the work itself because of a conflict of interest (including business conflicts) or lack of the necessary expertise or staff availability, or were the client to refuse to retain CRA, you would be free to refer the work elsewhere, further provided that you (i) first obtain written confirmation from an executive officer of CRA confirming CRA's position and (ii) that you do not use any CRA resources (including confidential information) or refer in any way to your

December 11, 2006
Page 3

consulting arrangement with CRA in connection with any work product, reports or opinions provided in such matters. In addition, in the event that CRA is involved in an auction (as the party overseeing or in representing a bidder), you shall not be permitted to provide any consulting services to any bidder in the auction without CRA's prior written consent, which consent will not be unreasonably withheld, and further subject to any approvals that may be required from an affected client. You agree not to be a witness adverse to CRA or its client's interest in any litigation, administrative or adversarial matter in which CRA is representing a party that is or may be adverse to you or your prospective client without CRA's written consent, provided that nothing however should prevent you from fully and truthfully testifying in response to or as compelled by subpoena as a witness or party in any proceeding. Notwithstanding the above, CRA agrees that you are not required to offer to CRA, nor permitted to use CRA support or resources in any matter relating to or associated with any QUALCOMM entities for whom you are permitted to work on your own time subject to the terms of this Agreement.

5. **Inventions, Confidentiality, and Intellectual Property -** As a consultant to CRA you will be required to sign and be bound by CRA's standard Invention, Confidentiality, Publication and Restrictive Covenant Agreement, a copy of which is enclosed for your review. During the Term of this agreement and for one year thereafter, CRA will have an unrestricted, irrevocable, world wide, royalty and cost free license to use any of your owned intellectual property (the "IP Rights") that pre-existed the effective date of this agreement in any auction or similar activity. In the event that a matter or project initiated after the effective date of this Agreement requires the continued IP Rights after the termination or expiration of this Agreement, CRA and CRA's clients shall be further granted the IP Rights until such project or matter has been concluded. In the event that your consulting relationship with CRA continues for a period of 4 years, then you agree that CRA will have the IP Rights in perpetuity. Notwithstanding the above, CRA shall not be entitled to any IP Rights created in connection with any QUALCOMM matters, except to the extent that such IP Rights are used by you in connection with a matter with CRA under this Agreement. You and CRA may review the terms of this Section 5 no sooner than one (1) year from the effective date of this agreement and no longer than 30 months after the effective date, and, upon terms acceptable to both you and CRA, may amend the terms of this Section 5. The terms of this paragraph shall survive termination or expiration of this agreement.

6. **Release and Indemnity:** You agree that CRA, its officers, directors, employees, consultants (the "CRA Parties") and CRA clients involved in such matters are released by you individually and in any capacity in which you have an interest, for any claims, fees, or damages related to the manner, method, process and conduct of

December 11, 2006
Page 4

auctions that existed as of the effective date of this consulting agreement with CRA, and for any future claims, rights, demands, fees or damages against any CRA Parties or any of CRA's clients that they infringed upon or used any intellectual property, patent, method or process in which you directly or indirectly have (or may in the future have) an interest. You further agree that in the event CRA is required to pay damages, royalties, fees or other amounts in connection with third party claims that CRA or its clients infringed upon such third party's intellectual property as a result of CRA using intellectual property in which you have (or claim) a direct or indirect interest, you agree to indemnify, reimburse and/or pay CRA for all such amounts owed or paid by CRA (the "IP Claims"). CRA shall have the right of set-off from any amounts due and owing to you to apply towards payment of such IP Claims. The terms of this paragraph shall survive termination or expiration of this agreement.

7. <u>Term</u>. Unless sooner terminated for cause, the initial term of this Agreement shall be for one year commencing on the date of your acceptance below (the "Initial Term"). Unless so terminated, at the end of the Initial Term and at the end of each year thereafter, the term of this Agreement will automatically be extended for an additional one year period ("Renewal Term"). Either party may terminate this agreement at any time upon providing the other party written notice of at least sixty (60) days. The "Term" shall include the Initial Term and any subsequent Renewal Terms.

8. <u>Independent Contractor</u>. The relationship between you and CRA is that of independent contractors. Nothing herein shall create a relationship of employer and employee, principal and agent, partnership or joint venture between you and CRA.

9. <u>Miscellaneous.</u> To the extent that this agreement requires you to purchase CRA stock on the open market during a specific time, nothing in this agreement shall preempt or supersede your requirement to comply with CRA's insider trading policies, including quiet periods, as they pertain to both activity in CRA stock or client accounts. In the event that trading in CRA stock is subject to a quiet period or other mandated black out provision, you shall purchase CRA stock within five (5) business days following the conclusion of the quiet period. You shall at all times be subject to the laws, rules and regulations governing the trading in all securities. Additional terms and conditions governing this relationship, are set forth in the Standard Terms and Conditions made a part of this Agreement and attached as Schedule "A" and that certain Confidentiality, Publications and Restrictive Covenant Agreement of proximate date herein. This Agreement, and the ancillary agreements referenced herein, shall supersede and replace any other prior agreements or understandings, both written or oral, you had with CRA.

December 11, 2006
Page 5

If these terms are acceptable, please sign and return a copy of this letter.  My colleagues and I are all looking forward to you joining CRA.

Very truly yours,

CRA INTERNATIONAL, INC.


_____
JAMES C BURROWS
PRESIDENT AND CEO


TERMS ACCEPTED:


_____
DAVID SALANT
DATE: _Dec. 8, 2006_____

**SCHEDULE A**
**STANDARD TERMS AND CONDITIONS**

1. <u>Use of Names</u>.  CRA International, Inc. (hereinafter referred to as the "Company") may disclose publicly that (the party to this Agreement hereinafter referred to as the "Consultant") is exclusively affiliated with the Company as an economic, financial or business consultant.  The Consultant will not permit Consultant's name to be used by any other economic, financial or business consulting firm, whether as a reference to an affiliation or otherwise.

2. <u>Support</u>.  The Company and Consultant shall mutually agree on the need and scope of professional support that may required in connection with any Company consulting engagement in which the Consultant is involved.

3. <u>Activities and Warranties of the Consultant</u>.  While the Consultant is consulting for the Company, the Consultant shall comply with the Company's standard policies having general application to its consultants, including, but not limited to, the Company's Code of Business Conduct and Ethics, non-discrimination, non-harassment, conflicts, confidentiality, Foreign Corrupt Practices Act and insider trading.  The Consultant agrees to comply with all applicable laws and regulations in performing services for the Company.  The Consultant shall have no authority to bind the Company to any agreement, contract or other obligation, and shall not hold himself or herself out to any third party as possessing such authority, without the express prior written authorization of the Company's President or Board of Directors.

4. <u>Reimbursement of Expenses</u>.  The Consultant shall be reimbursed for reasonable out-of-pocket expenses, provided that the Consultant has received prior approval for such expenses from a Company executive officer or Company practice head (or such amounts are within an expense budget provided for the Consultant by an executive officer or Company practice head.  Receipts are required for all expenses in excess of $25.00.  Invoices (in the form of Exhibit I) shall be submitted every four weeks in accordance with the Company's fiscal periods.

5. <u>Termination</u>.

   a) In addition to the notice provisions to terminate this agreement, this Agreement shall terminate automatically upon the death of the Consultant during the term of this Agreement.  In addition, this Agreement may be terminated by either party for Cause (as hereinafter defined) (i) if such Cause is not cured within 30 days after written notice to the other party if such Cause is curable or (ii) immediately upon notice if it is not.  In the case of termination by the Company, the term "Cause" shall mean (x) any felony criminal act under applicable law, or dishonesty, embezzlement or fraud, (y) any material breach of any term or condition of this Agreement, or (z) any material breach of any written policy of the Company which is customary for companies similarly situated to the Company.  In the case of termination by the Consultant, the term "Cause" shall mean any material breach by the Company of any term or provision of this Agreement, including, without limitation, Section 7 hereof.  The obligation of the Consultant to perform economic, financial or business consulting and incidental recruiting services for the Company hereunder shall be excused during the Consultant's Disability (as hereinafter defined), provided, however, that such obligation shall resume during the term of this Agreement if the Consultant recovers from his Disability such that he is able to perform his duties hereunder.  For the purposes of this Agreement, the term "Disability" shall mean the Consultant's inability to perform duties hereunder because of mental or physical infirmities for a period of six months or more.

   b) Upon termination of the Consultant's consulting for the Company for any reason, he shall immediately deliver to the Company at its principal place of business all documents, writings and materials containing information or data relating to the business or assets of the Company which are in his possession, custody or control, whether or not then on the premises of the Company, and which have not been publicly disseminated by the Company.

Page 1 of 2

6.   Miscellaneous:

a       No amendment, modification, renewal (other then is set forth in Section 6 of the letter agreement
        of which this is a Schedule), extension, waiver or termination of this Agreement or any of the
        provisions herein contained shall be binding upon either party unless made in writing and signed
        by an executive officer of the Company and the Consultant.  Failure by any party to insist upon
        strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a
        waiver of such terms, covenants, or conditions.

b       This Schedule A and the Agreement are personal to the Consultant and shall not be assigned by
        Consultant without the prior written consent of the Company, which consent may be withheld for
        any reason.  The Company may assign this Agreement and its rights hereunder to any person or
        entity that is the acquirer in a sale of the Company and after such assignment such person or entity
        shall be deemed the Company hereunder for all purposes.  This Agreement shall inure to the
        benefit of, and be binding upon the respective heirs, legal representatives, successors and
        permitted assigns of the Company and the Consultant.

c       In the event that any provision of this Agreement shall be determined to be unenforceable by any
        court of competent jurisdiction by reason of its extending for too great a period of time or over too
        large a geographic area or over too great a range of activities, it shall be interpreted to extend only
        over the maximum period of time, geographic area, or range of activities as to which it may be
        enforceable.  If after application of the preceding sentence, any provision of this Agreement shall
        be determined to be invalid, illegal or otherwise unenforceable by any court of competent
        jurisdiction, the validity, legality and enforceability of the other provisions of this Agreement shall
        not be affected thereby.  Except as otherwise provided in this paragraph, any invalid, illegal or
        unenforceable provision of this Agreement shall be severable, and after any such severance, all
        other provisions hereof shall remain in full force and effect.

d       The Consultant recognizes that money damages alone would not adequately compensate the
        Company in the event of breach by Consultant of this Agreement, and therefore agrees that, in
        addition to all other remedies available to the Company, at law, in equity or otherwise, the
        Company shall be entitled to injunctive relief for the enforcement hereof. THE CONSULTANT
        WAIVES ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY CLAIMS
        ARISING HEREUNDER.

Page 2 of 2

**EXHIBIT 1**

**SAMPLE INDEPENDENT CONTRACTOR INVOICE**
[ On Business Letterhead ]

Contractor Name _____        Tax ID or Soc. Sec. No._____

Address _____

_____

_____

Week Ending Date _____   Project Name _____   Project No. _____

| Description | Date | # of Hours | Rate | Amount |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  | TOTAL |  |

| Expenses (include copies of receipts) | Amount |
|---|---|
| Travel -- Airfares |  |
| Travel -- Other Transportation |  |
| Travel -- Lodging |  |
| Travel -- Meals and Other |  |
| Other |  |
| Total Expenses |  |
| Total Invoice |  |

*PJS 12/11/06*

# EXHIBIT B



July 7, 2008

By Federal Express and Via Email

Mr. David Salant
332 Blackfield Drive
Tiburon, CA 94920

Re:  Senior Consultant Arrangement with CRA International, Inc.

Dear David:

Attached please find a corrected letter relating to the above matter.  The prior letter dated July 7, 2008 had the incorrect dates inserted. *This is the corrected and revised letter.*  In accordance with the provisions of Section 7 of the Senior Consultant letter agreement dated December 11, 2006 (the "Agreement"), please allow this letter to constitute formal written notice of CRA's intention to terminate the Agreement effective sixty days from the date of this letter or September 5, 2008 (the "Termination Date").   In accordance with the Agreement, certain continuing obligations and requirements continue during the notice period and subsequent to the Termination Date.  In connection with this notice, please provide CRA with your final invoice for any amounts you believe are due and owing.  CRA shall review this invoice and shall also determine what amounts are due you and if any offsets or other amounts are due and owing to CRA under the Agreement.

As is provided in the Agreement, you are required to repay CRA the unforgiven principal balance of the forgivable loan, plus any accrued and accruing interest within thirty (30) days from the Termination Date, or October 5, 2008.   Based on CRA's records, the current outstanding balance of principal and interest that will be due and owing as of October 5, 2008 shall be $187,352.89, with interest accruing thereafter at a per diem amount of $24.51 thereafter.  In addition, in accordance with the Agreement, we are aware that your broker is holding for CRA as collateral for the loan, 2,355 shares of CRA stock that is legended and restricted from sale.  We can discuss the process to apply the restricted shares to reduce a portion of the balance.  I will also note that during the notice period and subsequent to the Termination Date, you have certain obligations, including, but not limited to, confidentiality and compliance with the restrictive covenants set forth in the CRA Invention, Confidentiality, Publication and Restrictive Covenant Agreement, a copy of which is attached for your convenience.  In accordance with the terms of the above-referenced agreement, CRA expects that you will not misuse or disclose any confidential information belonging to CRA or its clients as outlined therein.  CRA would also like to remind you of your obligation to return to CRA any CRA or client confidential information belonging to CRA or a CRA client still in your possession (in any form), including electronic, originals and all copies of such information. Nothing in this letter shall waive or release you from any continuing terms and conditions relating to the Agreement.

EXHIBIT B



Mr. David Salant
July 7, 2008
Page 2

      CRA will also continue your medical and dental coverage in its international medical and dental program through the Termination Date (the "Coverage End Date"). Upon termination of your coverage with CRA and upon completion of the appropriate COBRA paperwork, you may continue your participation in CRA's international medical and dental insurance plans under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) to the same extent that such insurance is provided to persons associated with CRA. If during this period of time you obtain medical insurance or otherwise become covered under an alternative medical or dental insurance plan, you agree to notify CRA, as you will no longer be eligible to continue the above stated coverage through COBRA. COBRA paperwork will be provided to you directly from our COBRA administrator Sentinel Benefits. Please read this paperwork carefully as it describes your rights and responsibilities for continuation of coverage.

      I would also add that during the notice period and following the Termination Date, you are not to contact any CRA clients unless you receive prior express written permission from an executive officer of the CRA.

      Thank you for your services in connection with the Agreement. Please feel free to contact me with any questions or to discuss the logistics of repaying your loan or your other requirements referenced above.

Sincerely yours,

CRA INTERNATIONAL, INC.

JONATHAN D. YELLIN
General Counsel

CC:  James C. Burrows

**CRA International, Inc.**
**Invention, Confidentiality, Publication and Restrictive Covenant Agreement**

Consultant's Name: _DAVID J SALANT_    ("Consultant")

In consideration of the terms of my relationship with CRA International, Inc. ("CRA") as set forth in the letter of proximate date herein (the "Letter"), Consultant agrees with CRA as follows:

*I. Purpose of This Agreement*

This Agreement represents CRA's and Consultant's effort to express in plain terms the rights and obligations concerning confidential information belonging to CRA or its clients, concerning publications and work product produced during the term of my consulting relationship with CRA, as well as restrictions governing Consultant's conduct during and following the termination or expiration of the consulting relationship with CRA.

*II. Confidential Information*

Consultant recognizes that Consultant's relationship with CRA is one of trust and confidence, and that during the period of this relationship with CRA, Consultant may acquire knowledge of, or have access to, confidential information belonging to CRA or its clients. Consultant agrees not to disclose confidential information to anyone outside of CRA, either during or subsequent to Consultant's relationship with CRA, subject to the exceptions enumerated below. For purposes of this Agreement, CRA and Consultant agree that "confidential information" shall mean CRA's or a client's confidential, business and proprietary information, which shall include, but not be limited to, technical data and know-how, as well as information relating to types of projects, research, products, software, models, services, development, inventions, personnel, clients, engagements, proposals, contact lists, processes, engineering, marketing, techniques, customers, pricing; internal procedures, business and marketing plans or strategies, finances, employees, business opportunities, and other related confidential and proprietary information, in any form presented or revealed. Consultant understands that confidential information includes the above types of information however provided or revealed to Consultant, whether or not Consultant has been specifically notified of such designation, and also includes other types of generic classes of information that CRA or a CRA client has notified Consultant are considered confidential. In such cases, Consultant understands that such written notification may include CRA's written policies and procedures as well as written notices directed to Consultant personally. For purposes of this Agreement, CRA also includes all of its subsidiaries.

CRA agrees that Consultant's obligation not to disclose confidential information is subject to the following exceptions: 1) any information that is generally known or available to the public or that has been disclosed to the public in connection with a patent or copyright registration; 2) any information that CRA or a CRA client has disclosed to a third party, where the effect of such disclosure is to make the information public; 3) any information that CRA has authorized Consultant to disclose by means of a letter addressed to me and signed by CRA's President or Executive Vice President; 4) any information belonging to CRA that CRA has requested Consultant to disclose in the course of Consultant's work for CRA or that is required to be disclosed as part of Consultant's performance of his CRA job function; 5) and if requested to be disclosed by an order of a court or other administrative body, provided however, that Consultant give prompt notice of such request to CRA's General Counsel prior to such disclosure so that CRA can take any appropriate action it deems necessary to limit or implement such disclosure.

*III. Restrictive Covenants*

In consideration of the mutual covenants contained in this Agreement and other good and valuable consideration, including, but not limited to the terms of the relationship with CRA, the sufficiency of which is acknowledged, Consultant agrees that while he/she is continues the relationship with CRA, and for a period of twelve (12) months following the termination or expiration of such relationship with CRA for whatever reason, Consultant, on behalf of his/herself or any other person or entity, will not, directly or indirectly: (i) solicit, induce, engage, hire, or attempt to hire any person who is employed by CRA or engaged as an independent contractor by CRA or its affiliates; or otherwise induce or encourage employees or independent contractors of CRA or its

- 18 -

affiliates (or any other person who may have been employed or engaged as an independent contractor by CRA during the twelve (12) month period prior to Consultant's date of termination) to terminate their employment or other engagement with CRA and/or (ii) solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the clients, customers, or business partners of CRA which Consultant contacted, solicited, or provided services to while Consultant was under the relationship arrangement with CRA during the twenty-four (24) month period prior to the termination or cessation of Consultant's relationship with CRA. Subsection (ii) of this paragraph III shall not apply to clients where Consultant can substantially prove that Consultant served as the primary expert or provided substantial services prior to the effective date of this agreement.

### IV. Inventions, Patents, and Copyrights

Consultant agrees to communicate and assign to CRA, or its clients if CRA so requests, all inventions that Consultant may make during Consultant's relationship with CRA, whether conceived during or outside of CRA's normal working hours, including in connection with any academic or research activities entered into during the Consultant's relationship with CRA. Nothing herein or in the Letter transfers or will transfer to CRA any intellectual property owned by Auction Technologies, Inc. or QUALCOMM, subject however, with respect to Auction Technologies, Consultant shall grant CRA to the extent possible, the IP Rights (as defined in the Letter). For purposes of this agreement, CRA and Consultant agree that "Invention" shall be defined as follows: "Any invention, potentially patentable idea, discovery, method, process, model, technique or improvement, whether or not patentable and whether or not reduced to writing or to practice."

If requested to do so by CRA, whether during or subsequent to Consultant's relationship with CRA, Consultant agrees to do whatever is reasonably required to take out patents on inventions assignable to CRA under this Agreement, and to assign all such patents and applications relating to them to CRA or to persons or firms designated by CRA. While subject to the relationship with CRA, Consultant agrees to keep and promptly make available to CRA records of the type required to obtain patents. If requested to do so by CRA, whether during or subsequent to Consultant's relationship, Consultant agrees to do whatever is reasonably required to assist CRA in obtaining copyrights on written work created by Consultant in the course of or arising out of Consultant's work for CRA. CRA agrees to pay all costs of procuring patents or copyrights and making assignments of them, when such patents or copyrights are applied for at CRA's request. Since Consultant's obligations to CRA will continue after Consultant's relationship has ended with CRA, CRA agrees after the cessation of the relationship with CRA to pay for actual out of pocket costs incurred in order to comply with this Section IV of the Agreement and for the reasonable time incurred by Consultant's at Consultant's then prevailing hourly rate.

### V. Consultant's Publications

CRA wishes to encourage publication of professional works, but also wishes to protect its rights under this Agreement with respect to confidential information, inventions and Consultants' work product. Consultant understands that the substance and quality of Consultant's publications, including publications not sponsored by CRA, may affect the reputation and business interests of CRA and the professional reputations of Consultant's colleagues. Consultant agrees, therefore, during Consultant's relationship with CRA, to obtain written permission from CRA's President prior to submitting any work of Consultant for publication or agreeing to have Consultant's or CRA's name used in connection with any publication, and to allow CRA to review the content and substance of such materials. If at the time that Consultant signs this agreement, Consultant has agreed to publish any work or to have Consultant's name used in connection with any publication that will appear in the future, Consultant agrees to describe any such agreements in a signed letter to CRA's President, and attach a copy to this Agreement. Consultant further agrees after the relationship with CRA has ended, not to use CRA's name or logo (or any similar derivation) in connection with any publication of Consultant's work unless specifically authorized to do so by a letter signed by CRA's President or Executive Vice President. Notwithstanding the above, Consultant's compliance with this Section V in connection with the provision of services to any third parties in connection with matters involving QUALCOMM shall be excused, and which shall not provide any attribution to CRA or Consultant's relationship to CRA. Consultant understands that nothing in this Section modifies Consultant's obligation, under other Sections of this Agreement, not to disclose confidential information.

### VI. Termination Provisions

Upon the termination or expiration date of Consultant's relationship with CRA, (the "Termination Date"), Consultant agrees to return promptly any confidential information, including computer programs, specifications, drawings, blueprints, reproductions, sketches, notes, reports, proposals, business plans, or copies of them, other documents or materials, tools, equipment, or other property belonging to CRA or its clients.

All documents and information in whatever form obtained, produced, stored (e.g., hard copy, microfilm, microfiche or computer files), or prepared by any employee or independent contractor of CRA including, without limitation, Consultant, in CRA's normal course of business (the "Proprietary Documents") are, and will remain after the Termination Date, CRA's property and, to the extent applicable, of the client of CRA. Consultant may not remove the Proprietary Documents, or copies thereof, from CRA's offices, or from any other place where the Proprietary Documents are located, unless the President of CRA has received a written request from a client, for whom CRA rendered consulting services, that CRA release specifically identified Proprietary Documents pertaining to the client. On the Termination Date, Consultant must immediately discontinue use of the Proprietary Documents unless CRA has received this written request.

### VII. Other Legal Provisions

A. To avoid any subsequent misunderstanding about this Agreement, CRA and Consultant agree that it is supplemental of and in addition to any other agreements signed between Consultant and CRA, and shall not be construed to limit or restrict any other obligations or restrictions upon Consultant relating to the subject matter herein. Consultant also agrees that subsequent modifications of this Agreement will not be effective unless they are in writing and signed by both Consultant and the President or Executive Vice President of CRA.

B. CRA and Consultant agree that this Agreement will bind any successors in interest of CRA or Consultant, including, for example, successors, heirs, assignees, executors and administrators. The terms of this Agreement shall survive the Termination Date.

C. If any court or administrative agency determines that part of this Agreement cannot be enforced, CRA and Consultant agree that such terms may be modified by such entity to the extent necessary to become enforceable. The remaining terms of the Agreement will remain in full force and effect.

D. If CRA ever claims that Consultant has violated or is about to violate Consultant's obligations with respect to any confidential information, Consultant agrees that Consultant will have the burden of proving that the relevant information is not confidential information (as defined in Section II of this Agreement). In addition to any other rights and damages, CRA shall be entitled to injunctive relief to prevent Consultant from disclosing confidential information, since it is agreed that money damages alone would not provide adequate compensation to CRA for a breach or threatened breach.

E. CRA's or Consultant's failure to enforce any violation of this Agreement shall not be a waiver of CRA's or Consultant's rights to seek enforcement of any future violation or be construed that such failure waives CRA's or Consultant's rights to seek any subsequent enforcement of a similar breach of the Agreement.

F. CRA AND CONSULTANT EACH IRREVOCABLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, SUIT OR OTHER LEGAL PROCEEDING ARISING UNDER OR RELATING TO THIS AGREEMENT.

I HAVE READ THIS AGREEMENT AND I UNDERSTAND IT.

CRA International, Inc.

By: _____

Its:     CEO

Consultant

Name: DAVID J. SALANT

- 20 -

Date _Dec 19, 2006_          Date _Dec 7, 2006_

(Please sign and return two copies of this Agreement.  A fully executed copy will be returned to you.)

1

**PROOF OF SERVICE**

2

I, Mary Garner, declare:

3

I am a citizen of the United States and employed in Los Angeles County,
California. I am over the age of eighteen years and not a party to the within-entitled
action. My business address is 350 South Grand Avenue, Suite 2300, Los Angeles,
California 90071. On October 9, 2012, I served a copy of the within document(s):

4

5

6

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM OF CRA INTERNATIONAL, INC.**

7

☐    ELECTRONICALLY: I caused a true and correct copy thereof to be
electronically filed using the Court's Electronic Court Filing ("ECF")
System and service was completed by electronic means by transmittal
of a Notice of Electronic Filing on the registered participants of the
ECF System. I served those parties who are not registered participants
of the ECF System as indicated below.

8

9

10

11

☒    by placing the document(s) listed above in a sealed envelope with
postage thereon fully prepaid, in the United States mail at Los Angeles,
California addressed as set forth below. I am readily familiar with the
firm's practice of collection and processing correspondence for
mailing. Under that practice it would be deposited with the U.S. Postal
Service on that same day with postage thereon fully prepaid in the
ordinary course of business. I am aware that on motion of the party
served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for
mailing in affidavit.

12

13

14

15

16

☐    by placing the document(s) listed above in a sealed Norco Overnite
Express envelope and affixing a pre-paid air bill, and causing the
envelope to be delivered to a Norco agent for delivery.

17

18

☐    by personally delivering the document(s) listed above to the person(s)
at the address(es) set forth below.

19

20

Noah D. Lebowitz, Esq.                              Attorneys for Plaintiff:
Duckworth Peters Lebowitz Olivier LLP
100 Bush Street, Suite 1800                         ☐ *Registered*
San Francisco, CA 94104                             *participants of ECF*
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail: noah@dplolaw.com

21

22

23

24

I declare under penalty of perjury under the laws of the United States of
America that the above is true and correct.

25

Executed on October 9, 2012, at Los Angeles, California.

26

27

_____
Mary Garner

28

FORD & HARRISON
LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:129293.1

ANSWER TO COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM OF CRA
INTERNATIONAL--CV12-04836 PSG